United States District Court
Southern District of Texas
**ENTERED**
February 16, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOP-CO INC., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-1937 |
| | § | |
| BLACKHAWK SPECIALTY TOOLS, LLC, | § | |
| | § | |
| Defendant. | § | |

# ORDER

Before the Court is Plaintiff Top-Co Inc.'s Opening Claim Construction Brief (Doc. #37), Defendant Blackhawk Specialty Tools, LLC's Opening Claim Construction Brief (Doc. #38), Top-Co's Brief in Opposition to Blackhawk's Opening Claim Construction Brief (Doc. #42), and Blackhawk's Claim Construction Reply Brief (Doc. #41). In this patent infringement suit involving dual diameter and rotating centralizers, the parties seek construction of several disputed terms contained in the asserted claims of U.S. Patent 7,182,131 (the '131 Patent) and U.S. Patent 7,156,171 (the '171 Patent). This Court held a hearing under *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and now construes the disputed terms as follows.

## I. Legal Standards

"[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman*, 517 U.S. at 372. In construing disputed terms, "the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (alterations in original) (quoting 35 U.S.C. § 112). Claim terms "are generally given their ordinary and customary meaning, which is

the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1352, 1360 (Fed Cir. 2008) (citation omitted).

"In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (citation omitted). But construction of commonly understood words may still be needed if the ordinary meaning does not resolve the parties' dispute regarding the claim's scope. *O2 Micro*, 521 F.3d at 1361. Construction is also necessary when the meaning of a claim term is not readily apparent. *Phillips*, 415 F.3d at 1314. Although a district court has an obligation to construe disputed terms when they affect the scope of the invention, it is "not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *Millennium Cryogenic Techs., Ltd. v. Weatherford Artificial Lift Sys., Inc.*, No. H-12-0890, 2013 WL 2951048, at *6 (S.D. Tex. June 14, 2013) (citing *O2 Micro*, 521 F.3d at 1360).

### A. Intrinsic Evidence

When construing disputed terms, there is an established pecking order for the sources a court may consider. The most probative category is intrinsic evidence, which includes the claims, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

#### 1. Claim Language

Within the intrinsic evidence category, a court should begin its analysis by looking "to the words of the claims themselves, both asserted and nonasserted, to define the scope of the

patented invention." *Id.* (citation omitted). While ordinary meaning usually governs, "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Id.* (citation omitted). The court should also consider the context in which the terms are used in the claims and any differences among the claims. *Phillips*, 415 F.3d at 1314. "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* (citations omitted).

### 2. Specification

As is often the case, much of the parties' disagreement regarding the disputed terms centers on how the specification should influence their construction. *See id.* at 1312 ("The role of the specification in claim construction has been an issue in patent law decisions in this country for nearly two centuries."). The specification is "always highly relevant to the claim construction analysis" and "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. Indeed, the specification may resolve a disputed term when the "ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (citation omitted). Plaintiff points out that despite the specification's importance, a court should not "limit [a patentee] to his preferred embodiment or import a limitation from the specification into the claims," because "[t]he claims, not specification embodiments, define the scope of patent protection." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) (citing *Phillips*, 415 F.3d at 1323). "And, even where a patent describes only a single embodiment," as is the case here, "claims will not be read restrictively

3

unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) (citations and internal quotation marks omitted). The "distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Phillips*, 415 F.3d at 1323. The overarching goal is to "capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (citation omitted).

*3. Prosecution History*

The final category of intrinsic evidence is the prosecution history, which "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Vitronics*, 90 F.3d at 1582. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (citations omitted).

**B. Extrinsic Evidence**

When intrinsic evidence resolves the ambiguity in a disputed claim term, "it is improper to rely on extrinsic evidence." *Id.* at 1583 (citing examples). If, however, ambiguity remains after examining the intrinsic evidence, the court may then consider extrinsic evidence, such as "expert testimony, inventor testimony, dictionaries, and technical treatises and articles." *Id.* at 1584

4

(citation omitted). The Federal Circuit has "especially noted the help that technical dictionaries may provide to a court 'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." *Phillips*, 415 F.3d at 1318 (quoting *Vitronics*, 90 F.3d at 1584 n.6). "[E]xtrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

## II. Claim Terms

Below are the Court's constructions of the disputed terms. The Court's decision is based on counsel's arguments and intrinsic evidence. The Court did not use any extrinsic evidence in this case as it was unnecessary for the Court to reach its conclusions.

### A. "rotatably mounted" – Claim 1 of the '131 Patent

Court's Construction: Attached to the sub in such a way as to allow rotation in operation.

Both parties agree to the definition aside from the "in operation" at the end of the construction. However, a look at the specification makes clear that the centralizer is meant to be used "in a wellbore, [however] the use of the centralizer of the present invention is not so limited." '131 Patent at col. 7, lines 23-24. The invention "may be used in any application in which it is desirable to maintain minimum standoff between two concentric tubular members." *Id.* lines 26-28. However, regardless of the use or conditions of use, the centralizers are meant to be able to allow rotation. Neither party disputes this fact. Doc. #38 at 1.[1]

Plaintiff seeks a much more limited definition specifying certain portions of the wellbore, but such a narrow construction is not supported by the specification. As quoted above the claim in question is not limited to use in a wellbore. Accordingly, Plaintiff's request for discussing use

---
[1] Using ECF page numbers.

of the collars in "the curved or horizontal portion of a well bore" unnecessarily draws the reader's attention to a limitation not present in the specification. While a wellbore is one stated use, the reading of the specification demands a broader application of the claim.

### B. "thread means" – Claim 1 of the '131 Patent

Court's Construction: No construction necessary.

It is the Court's determination that no claim construction is necessary. Additionally, the claim is not subject to 35 U.S.C. § 112(f) and is not a "means-plus-function" claim. The Court agrees with Plaintiff's argument that the claim element in this case recites a definite structure which performs the described function. To interpret the language as a "means-plus-function" claim would violate the Federal Circuit's holding in *Cole v. Kimberly-Clark Corp.* 102 F.3d 524, 531 (Fed. Cir. 1996). In *Cole* the Federal Circuit held that in order to be interpreted as a means-plus-function claim, the "claim element must not recite a definite structure which performs the described function." *Id.*

In the present case, "means" is not a simple placeholder for function, but rather a descriptor of the joining process. Additionally, Defendant's argument that–because there is only female threading shown in the diagrams the claim is invalid–is short sighted and purposefully refuses to impart the knowledge of a person having ordinary skill in the art, or even just a rational reader. This is a case where the meaning is plain even to a lay judge: the thread means refers to male and female threading. *See Phillips*, 415 F.3d at 1314. As such, no construction is necessary.

### C. "shoulders are formed by milling body assembly" – Claim 2 of the '131 Patent

Court's Construction: The claim is a product-by-process claim.

A product-by-process claim is "one in which the product is defined at least in part in terms of the method or process by which it is made." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 158 (1989). That is the case here. The shoulder from Claim 1 of the '131 patent is further limited by the manner in which it is constructed. Additionally, the claim was acknowledged as a product-by-process claim by the examiner in a January 4, 2004 office action. The Court agrees with Defendant, that this is a quintessential product-by-process claim.

### D. "a groove formed in said collars for receiving the respective shoulders on said tubular member to limit the movement " – Claim 17 of the '171 Patent

Court's Construction: This limitation requires the inner diameter of each of the collars define a cut or depression that is sized to receive a shoulder formed in the tubular member, where the groove is sized to limit movement of the collar along the axis of the tubular member.

The Court adopts Defendant's proposed construction. Plaintiff argues that the claim should not be so limited and cites an office action with the PTO examiner as evidence that the claim was meant to be read more broadly. Specifically, Plaintiff argues that the claim should be read to allow the cutouts featured on the collars to meet the claim limitation in addition to the claim construction the Court has adopted. However, this is not what a plain reading of the claim language says, nor what the specification teaches.

Specifically the Court takes issue with the "annular shoulders" in Claim 17. While that is not a part of the language the Court is construing, it informs the meaning of "groove" and what it means to "receiv[e] the respective shoulders." The claim language suggests that the groove receives the entirety of the shoulder. And this makes sense if the shoulders are annular. The shoulder is on the outer diameter of the sub and receives the entirety of the groove formed in the collars.

This is the design specifically discussed in Col. 7:48-59 of the '171 Patent. While the

specification goes on to discuss the fact that the "shoulder need not be continuous . . . to function for the intended purpose and/or that one or more lugs that interact with a detent, notch or cutout formed in the I.D. of collar(s) . . ." could accomplish the same functionality, this is not what is claimed. *Id.* Col. 8:4-8. A groove that is receiving the respective annular shoulders contemplates more than a lug that interacts with a notch. A lug interacting with a notch as is described in the specification is not an annular shoulder. Accordingly, such a broad reading is not supported by the claim language.

### E. "reduced diameter portions" – Claim 18 of the '171 Patent

Court's Construction: This limitation requires that the collars have a first, larger outer diameter with the bow springs being mounted in a second, smaller outer diameter of the collars.

The reduced diameter portion in Claim 18 is a distinct and separate diameter from the larger outer diameter on the collar. Plaintiff's proposed "area with a smaller relative diameter" is too limiting in that it does not properly inform the jury that an entire circumference of the reduced diameter is necessary. If this construction was allowed, it could be misinterpreted as a groove or a notch where the bowsprings attach. However, this is not what the specification teaches.

The specification makes clear that the reduced diameter portion is distinct from the notches. As is seen in the summary of the invention, "the ends of the bow springs are mounted to the reduced diameter portion of the collar in *notches formed in the reduced diameter portion of the collar[.]*" '171 Patent, Col. 3:2-4 (emphasis added). Again, while discussing Figs. 13 and 14, "a plurality of notches formed in the reduced diameter portions." *Id.* at Col. 8:19-20. The reduced diameter portion should not be confused with the notches. The Court's construction illuminates this point and gives life to the specification's teaching.

### F. "plurality of notches" – Claim 20 of the '171 Patent

Court's Construction: No construction necessary.

The Court is unconvinced any further construction is necessary to shed light on the "plurality of notches" claim language. Additionally, Defendant's construction limits the notch to a cutout, a limitation not so imparted in the specification. The patent uses both notch and cutout (or cut-out). In Column 5, a "notch" is contemplated for attaching to a bowspring. Col. 5:54-68. The discussion goes on to label this notch as a cutout. *Id.*

However, elsewhere, a "detent, notch [] or cutout" is used to discuss attaching a bowspring. Col 8:8. Here the two words are used to represent similar functions but different fashions. If a notch was limited strictly to a cutout, the listing of the indentations here would be superfluous. Accordingly, the Defendant's limitation is too narrow.

### III. Conclusion

The Court hereby adopts the above constructions of the dispute claim terms.

It is so ORDERED.

FEB 1 1 2016
_____          _____
Date                             THE HONORABLE ALFRED H. BENNETT
                                 UNITED STATES DISTRICT JUDGE